CIVIL CASE INFORMATION STATEMENT
CIVIL CASES

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

*FILED*
*2018 DEC 21 A 10: 19*
*KANAWHA S. GATSON, CLERK*
*KANAWHA COUNTY CIRCUIT COURT*

I.    CASE STYLE:

Plaintiff(s)

**JAYSON HUTCHINSON,**

vs.

CASE NO: 18-C-1553

HONORABLE: Bloom

Defendant(s)

**UNITED DAIRY, INC.**
**George Wood**
**300 North Fifth Street**
**Post Office Box 280**
**Martins Ferry, OH 43935**

| Days to Answer | Type of Service |
|---|---|
| 30 days | WV Secretary of State |

Original and 6 copies of Complaint furnished herewith.

PYMT Type __K__
Rcpt # __567535__     __$200__✓ __$135___
Iss__Sum.+__2__cc     __No Sum. Iss
✓Ret. to Atty.     __$20cm X __
__Mailed CM/RM     __$5 clk X __
__Mailed to sos w/ck# _____
__Sent to _____ w/ck# _____ __$15 mdf X __

| PLAINTIFF:   JAYSON HUTCHINSON | CASE NUMBER: |
|---|---|
| DEFENDANT: UNITED DAIRY, INC. | |
| | |

II.    TYPE OF CASE:

| TORTS | | OTHER   CIVIL | |
|---|---|---|
| ☐  Asbestos | ☐  Adoption | ☐  Appeal from Magistrate Court |
| ☐  Professional Malpractice | ☐  Contract | ☐  Petition for Modification of Magistrate Sentence |
| ■  Personal Injury | ☐  Real Property | ☐  Miscellaneous Civil |
| ☐  Product Liability | ☐  Mental Health | ☐  Other |
| ☐  Other Tort | ☐  Appeal of Administrative Agency | ☐  Fraud or Conversion |

III.    JURY DEMAND:    ■ Yes    ☐ No
CASE WILL BE READY FOR TRIAL BY  *(MONTH/YEAR)*: 02/20

IV.    DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL
ACCOMMODATIONS DUE TO A DISABILITY OR AGE?    ☐ YES    ☐ NO
IF YES, PLEASE SPECIFY:
☐ Wheelchair accessible hearing room and other facilities
☐ Interpreter or other auxiliary aid for the hearing impaired
☐ Reader or other auxiliary aid for the visually impaired
☐ Spokesperson or other auxiliary aid for the speech impaired
■ Other:      Unknown at this time

ROBERT D. CLINE, JR. (W. Va. State Bar No. 755)

ROBERT A CAMPBELL (W. Va. State Bar. No. 6052)

R. CHAD DUFFIELD (W. Va. State Bar No. 9583)

Firm:        FARMER, CLINE & CAMPBELL, PLLC

Address:    P.O. Box 3842

Charleston, WV  25338

Telephone:  (304) 346-5990

Dated:       December 21, 2018

Signature:

Representing:

■ *Plaintiff*    ☐ *Defendant*

☐ *Cross-Complainant*

☐ *Cross-Defendant*

☐ *Pro Se*

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JAYSON HUTCHINSON,

     **Plaintiff,**

v.

        Civil Action No.: 18-C-1553

        Honorable Bloom

UNITED DAIRY, INC.

     **Defendant.**

*FILED DEC 21 A 10:20*
*CATHY S. GATSON, CLERK*
*KANAWHA COUNTY CIRCUIT COURT*

## COMPLAINT

The Plaintiff, Jayson Hutchinson, by and through his counsel, Farmer, Cline & Campbell, PLLC, hereby states the following for his Complaint.

### Parties

1.    Jayson Hutchinson (the "Plaintiff" or "Mr. Hutchinson"), is a resident of Kanawha County, West Virginia.

2.    Defendant United Dairy, Inc. is, upon information and belief, an Ohio corporation that has a principal office in Martins Ferry, Ohio and does business in, among other places, Kanawha County, West Virginia.

3.    At all times relevant to the allegations asserted in the Complaint, Mr. Hutchinson was working as an employee of United Dairy at it's Kanawha County, West Virginia location.

### Jurisdiction and Venue

4.    This Court has jurisdiction over United Dairy and is a proper venue for this action as United Dairy conducts business in Kanawha County, West Virginia and the

events giving rise to this cause of action occurred at United Dairy's facility located in Kanawha County, West Virginia.

<u>**Facts**</u>

5.      Mr. Hutchinson incorporates by reference all preceding allegations contained within this Complaint.

6.      On January 26, 2017 Mr. Hutchinson was working at United Dairy's facility located in Charleston, Kanawha County, West Virginia.

7.      Mr. Hutchinson was working as a "milk catcher" in the cooler area where stacks of milk crates move along a floor conveyor system.

8.      As one of the stacks of milk cartons came around a curve in the conveyor system, it became jammed such that other stacks of milk crates began to back up behind the jammed stack.

9.      It was not unusual for a stack of crates to become jammed.

10.     Mr. Hutchinson had been trained to attempt to release such a jam by jiggling the stack back and forth without de-energizing the conveyor system and interrupting production.

11.     As Mr. Hutchinson began to jiggle the stack back and forth, a chain from the floor conveyor jumped out of the floor track and pinned Mr. Hutchinson's leg against a metal plate that had been affixed to the inside part of the curved area of the floor conveyor.

12.     This was not the first time that the chain had jumped out of the track.

13.     Mr. Hutchinson's leg remained pinned between the metal chain and plate even after a coworker was able to hear his cries for help and reach the emergency stop button.

2

14.   Eventually, workers were able to free Mr. Hutchinson from the chain and he was taken to the hospital.

15.   Mr. Hutchinson suffered severe injuries such that the lower part of his left leg had to be amputated.

## NEGLIGENCE / DELIBERATE INTENT

16.   In accordance with applicable safety laws, regulations, rules, and standards, United Dairy owed a duty to its employees, including Mr. Hutchinson, to:

(a)   provide a safe workplace by maintaining the work areas and equipment in a safe condition;

(b)   maintain appropriate safety procedures regarding working on and around equipment and systems containing potentially hazardous energy that can be released;

(c)   provide training and retraining to employees on the required safety procedures for working with equipment and systems containing potentially hazardous energy;

(d)   monitor compliance with safety procedures;

17.   United Dairy negligently, willfully, wantonly, and/or intentionally breached the duties set forth above.

18.   United Dairy's breach of their duties was a proximate cause of the incident described above and Mr. Hutchinson's injuries and damages.

19.   To the extent that United Dairy is deemed to be entitled to the protections of West Virginia Code §§ 23-2-6 and 23-2-6a, United Dairy is liable to Mr. Hutchinson pursuant to West Virginia Code § 23-4-2 in that United Dairy:

(a) permitted unsafe and hazardous working conditions to exist in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(b) violated federal safety regulations and commonly accepted and well-known safety standards within United Dairy's industry or business that were specifically applicable to the particular work and working conditions involved in Mr. Hutchinson's incident and intended to address the specific hazards presented the unsafe working conditions identified in this complaint; and

(c) had actual knowledge of the existence of specific unsafe working conditions and of the high degree of risk and the strong probability of serious injury or death presented by specific unsafe working conditions prior to the incident that severely injured Mr. Hutchinson; and

(d) despite having actual knowledge of the matters set forth in subparagraphs a through c above, United Dairy nevertheless intentionally exposed Mr. Hutchinson to the specific unsafe working conditions.[1]

20.   As a direct and proximate result of being exposed to the unsafe working conditions set forth above, Mr. Hutchinson suffered a "serious compensable injury" as defined by W.Va. Code § 23-4-2(d)(v).

---

[1] As required under W.Va. Code § 23-4-2(d)(2)(C), a verified statement is attached as Exhibit A.

4

21.     More specifically, Occupational Safety and Health Standards found in 29 CFR 1910.147 required United Dairy to:

(a)     establish an energy control program by developing, documenting, and utilizing procedures for the control of potentially hazardous energy;

(b)     establish an employee training program whereby employees are trained on the recognition of hazardous energy sources and provided with the knowledge and skills required for the safe operation and usage of energy controls and of the company's energy control program;

(c)     establish a retraining and certification program for employees; and

(d)     inspect energy control procedures at least annually to ensure that the procedure and the requirements are being followed by employees;

22.     Upon information and belief, United Dairy violated the safety regulations set forth above, and other applicable safety standards, by:

(a)     failing to develop, document, utilize, and periodically inspect procedures for working with equipment and systems containing potentially hazardous energy;

(b)     failing to establish an employee training program and train and retain employees on the procedures for the control of potentially hazardous energy; and

(c)     failing to monitor compliance with procedures for the control of potentially hazardous energy.

23.     These failures created unsafe working conditions that presented a high degree of risk and a strong probability of serious injury or death.

24.     As noted above, these unsafe conditions violated federal safety regulations and commonly accepted and well-known safety standards within the industry.

25.     United Dairy had actual knowledge of the existence of the specific unsafe working conditions and the high degree of risk and strong probability of serious injury or death presented by the unsafe working conditions by virtue of, among other things:

  (a)     the fact that less than four months prior to Mr. Hutchinson's incident, United Dairy was cited by the Occupational Safety and Health Administration for failing to have proper safety procedures or protocols relating to the potentially hazardous energy when an employee suffered a crushed hand when another employee was performing maintenance on equipment at United Dairy's facility in Charleston; and

  (b)     the fact that in the weeks and months leading up to Mr. Hutchinson's incident, the chain part of the floor conveyor jumped out of the track on multiple occasions and, upon information and belief, supervisory employees were made aware of the situation and of a near miss incident.

26.     Despite having actual knowledge of the unsafe working conditions, United Dairy intentionally exposed Mr. Hutchinson and other employees to the unsafe working conditions.

27.   As a direct and proximate result of United Dairy's actions and/or inactions, and the unsafe working conditions presented, Mr. Hutchinson suffered severe injuries to his body for which he has and will continue to incur and/or experience in the future:

   a.   medical expenses;

   b.   lost wages;

   c.   pain and suffering;

   d.   disfigurement;

   e.   diminished capacity to enjoy life;

   f.   annoyance and inconvenience;

   g.   mental anguish; and

   h.   other consequences and damages associated with his injuries, as may be specified as this action progresses.

**WHEREFORE**, Plaintiff, Jayson Hutchinson, requests that he be awarded judgement against the Defendant for the following:

   a.   compensatory damages in an amount to be determined by a jury;

   b.   punitive damages to extent warranted by the facts and the law;

   c.   pre and post judgment interest as allowed by law;

   d.   attorneys' fees, costs and expenses incurred in connection with this action; and

   e.   such other and further relief as the Court deems just and appropriate under the circumstances.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

**JAYSON HUTCHINSON,**

**Plaintiff,**

**By Counsel:**

ROBERT D. CLINE, JR. (W.Va. State Bar No. 755)
ROBERT A. CAMPBELL (W.Va. State Bar No. 6052)
R. CHAD DUFFIELD (W.Va. State Bar No. 9583)
FARMER, CLINE & CAMPBELL PLLC
746 Myrtle Road (25314)
Post Office Box 3842
Charleston, WV 253338
(304) 346-5990

<u>VERIFIED STATEMENT OF JOHN G. GREEN II, P.E.</u>

1.  I have been retained by attorney for the Plaintiff, Robert A. Campbell, a partner in the firm of Farmer, Cline & Campbell, PLLC located in Charleston, WV.

2.  I have prepared this verified statement to be served with the Plaintiff's complaint.

3.  I hold a Bachelor of Science degree in Mechanical Engineering from Lafayette College in Easton, Pennsylvania (1979). I have over thirty-five (35) years of experience in the design, installation, commissioning, operation, maintenance, repair and troubleshooting of machinery and machine process systems, including all types of conveyors systems. I am well versed in the Code of Federal Regulations (CFR) promulgated by the Occupational Health and Safety Administration (OSHA) and the Mine Safety and Health Administration (MSHA).

4.  I am a licensed Professional Engineer in 16 States, including West Virginia (21766). My professional experience includes the application of the OSHA, MSHA and industry consensus standards, such as American National Standards Institute (ANSI), American Society of Mechanical Engineers (ASME) and American Petroleum Institute (API), to the safeguarding of material handling systems. This experience includes hazard analysis, risk assessment and the control or elimination of hazardous energy.

5.  I am employed as a Mechanical Engineer at Robson Forensic, Inc. and regularly perform investigations, analyses and reconstruction of industrial accidents. I provide technical reports and testimony toward the resolution of litigation involving industrial and construction site workplace safety, product defects and mechanical engineering issues. I have no financial interest in the outcome of this matter. My CV is attached and everything therein is true and correct.

6.  All of my opinions are stated within a reasonable degree of engineering and professional certainty and are subject to change should additional information become available.

7.  On January 26, 2017 at 12:45 PM, the Plaintiff Jayson Hutchinson, an employee of United Dairy located at 508 Roane Street, Charleston, WV, was attempting to unjam a stack of six milk crates from the drag chain conveyor that was installed in the floor of the cold room. Hutchinson was using a metal hook, approximately 34" long, to clear the jammed crates when the drag chain conveyor suddenly and unexpectedly became

**EXHIBIT A**

dislodged from the track. Hutchinson's ankle was caught between the dislodged drag chain and a metal side plate on the track.

8. Hutchinson was injured when he was unnecessarily and unreasonably exposed to and caught between the hazard created by the stored energy contained within the jammed drag chain conveyor. The combination of hazard and exposure created an unreasonably dangerous and unsafe working condition and was a cause of the injury to Hutchinson.

9. Employers, such as United Dairy, are required to protect their employees from the unexpected release of stored energy while servicing and/or maintaining equipment. This includes the exposure of employees to the release of hazardous energy during the unjamming of equipment while in operation. Prior to an employee engaging in the unjamming task, the equipment must be placed in an inoperable state with all hazardous energy dissipated and isolated.

10. Employers, such as United Dairy, are required to develop written procedures for the control of hazardous energy which include, but are not limited to, the intended use, procedural steps required to isolate, dissipate and control the energy source and the testing requirements necessary to verify that hazardous energy has been removed and isolated. Employers are also required to conduct periodic audits, not less than once per year (annually), to verify that the energy isolation procedures are being followed. Additionally, employers are required to train employees in the application of these energy isolation procedures. Retraining of employees shall be required when changes to job assignments, equipment, process or the procedures occur.

11. The OSHA Code of Federal Regulations (CFR) Title 29 was created in 1970 to establish and enforce workplace safety and health standards. Employers are required by these regulations to ensure that the workplace is free of recognized hazards which could harm their employees.

12. Employers, such as United Dairy, fall under OSHA Part 1910 – General Industry and are required to protect employees from the unexpected release of stored energy as outlined in 29 CFR, Subpart J, §1910.147 – The Control of Hazardous Energy (Lockout/Tagout).

13. Section 1910.147(a)(2)(i) States: "This standard applies to the control of energy during servicing and/or maintenance of machines and equipment."

2

14. Section 1910.147(b) defines *Servicing and/or Maintenance* as "Workplace activities such as constructing, installing, setting up, adjusting, inspecting, modifying, and maintaining and/or servicing machines or equipment. These activities include lubrication, cleaning **or unjamming of machines or equipment** and making adjustments or tool changes, where the employee may be exposed to the unexpected energization or startup of the equipment or release of hazardous energy." (Emphasis Added)

15. Section 1910.147(c)(1) further states the *Energy Control Program*: "The employer shall establish a program consisting of energy control procedures, employee training and periodic inspections to ensure that **before any employee performs any servicing** or maintenance on a machine or equipment where the unexpected energizing, startup or **release of stored energy could occur** and cause injury, the machine or **equipment shall be isolated from the energy source and rendered inoperative**." (Emphasis Added)

16. OSHA requires notification from an employer whenever any of the following four conditions are met; an employee is killed on the job or suffers a work-related hospitalization, amputation, or loss of an eye. The injury to Hutchinson resulted in an amputation; therefore United Dairy was required to notify the OSHA field office in Charleston, WV within 24 hours of the incident.

17. On January 31, 2017, OSHA conducted an investigation of the incident which caused the amputation injury to Hutchinson. As a result of the investigation, OSHA issued citation ID 02001 to the United Dairy facility on March 29, 2017, for a repeat violation of Section 1910.147(c)(4)(i) – "Procedures shall be developed, documented and utilized for the control of potentially hazardous energy when employees are engaged in the activities covered by this section." The fine for this repeat violation was $63,375.00 and is currently being contested.

18. On October 11, 2016, OSHA conducted an investigation of an incident which resulted in the hospitalization of an employee due to a work place injury. As a result of this investigation, OSHA issued citation ID 01001 to the United Dairy facility on November 28, 2016 for a serious violation of Section 1910.147(c)(4)(i) – "Procedures shall be developed, documented and utilized for the control of potentially hazardous energy when employees are engaged in the activities covered by this section." The fine for this serious violation was $8,908.00 and concluded with an Informal Settlement of $6,954.00

19. As a result of the October 11, 2016 investigation, which occurred prior to the injury to Hutchinson, and subsequent serious violation citations issued on November 28, 2016,

United Dairy knew the energy isolation procedures at the Charleston WV facility were deficient, lacking or non-existent and in spite of this knowledge, permitted the unreasonably dangerous and unsafe working condition to exist which caused the injury to Hutchinson.

20. On information and belief, United Dairy failed to properly train Hutchinson in the appropriate energy isolation procedures to safely clear the jammed milk crates and deprived Hutchinson and other employees the protection afforded by that training. This failure was a cause the injury to Hutchinson.

21. The failure of United Dairy to develop appropriate procedures for the control of hazardous energy, provide employee training on the use of those procedures and conduct procedure verification inspections for the unjamming of the drag chain conveyor, in accordance with OSHA 29 CFR, Subpart J, § 1910.147 – The Control of Hazardous Energy (Lockout/Tagout), created an unreasonably dangerous and unsafe working condition to exist which caused the injury to Hutchinson.

22. The citations issued by OSHA to United Dairy on November 28, 2016 and March 29, 2017 for the violation of Section 1910.147(c)(4)(i) – "Procedures shall be developed, documented and utilized for the control of potentially hazardous energy when employees are engaged in the activities covered by this section" are directly related to the unreasonably dangerous and unsafe working condition which caused the injury to Hutchinson.

John G. Green II, PE

4

**THE EXPERTS**

# Robson Forensic

### JOHN G. GREEN II, P.E.
### Mechanical Engineer – Industrial Machinery Expert

Experienced in the specification, installation, start-up, testing, operation, maintenance, demolition, and facilities management of process plant systems and associated equipment, diagnosing equipment faults, conducting root cause failure analysis, construction management, OSHA Standards CFR 29 – 1910 for General Industry and 1926 for Construction, MSHA Certified Surface Miner.

## ENGINEERING AND TECHNICAL EXPERIENCE

- Experience with the operation, maintenance, demolition, and facility management of various manufacturing processes and industrial equipment including large gas and steam turbine\generator sets and process steam turbines; centrifugal, horizontal, vertical, and piston style pumps; high speed rotary and piston compressors; centrifugal and axial fans; induction and synchronous AC motors; variable speed DC Motors and AC Variable Speed Drives (VFD); spur, bevel, helical, and worm type gearboxes; material handling belt, screw, and pneumatic conveyors; gantry, overhead and mobile cranes; coal crushers and pulverizers; supercritical once through and subcritical drum type boilers; shell and tube, plate and tube, and plate fin type heat exchangers, mechanical and natural draft cooling towers; electric arc, heat treatment, reheat and blast furnaces; slab and billet casters; various hot and cold rolling mills, including two and four high mills, sendzimir rolling mills; stationary (vat) pickling, grit blasting, and steel conditioning chipping, grinding, and scarfing methods to remove surface scale and imperfections; and various shaping, shearing, and straightening machines used in metal (steel) industries.

- Knowledge of Power Piping Code ANSI/ASME B31.1, ASME Section I – Power Boilers, ASME Section VIII – Pressure Vessels,  ASME, ANSI, API, NFPA and NSC Standards and Guidelines, as they relate to industrial equipment safeguarding and process plant (industrial) facilities and construction site safety.

- Application of the ANSI, ASME, and OSHA Standards for both General Industry and Construction related to confined spaces, fall protection, equipment guarding, asbestos and lead abatement, multi-employer workplace, personal protective equipment, electrical equipment, hand tools, crane operations, hazardous materials and communications, hazard analysis and risk management, scaffolding, walking/working surfaces, and Lock Out Tag Out.

- Responsible for the specification development, design review, and technical/economic evaluation of site projects involving all types of rotating equipment, material (coal) handling, and fire protection systems.

- Investigate process machinery failures, involving the analysis of laboratory data, the review of design specifications, purchasing documents, Operating/Maintenance Manuals, rebuild requirements and repair history to determine the "root cause" problem, and develop solutions to prevent re-occurrences.

**THE EXPERTS**
# Robson Forensic

### JOHN G. GREEN II, P.E.
### Mechanical Engineer – Industrial Machinery Expert

- Developed appropriate operation and maintenance strategies for process equipment using the Reliability Centered Maintenance process and related concepts.

- Well versed in all Predictive Maintenance Technologies, especially proficient with using a variety of vibration analysis equipment and the interpretation of vibration data for the diagnosis of machinery faults, critical speeds, and natural frequencies.

## SUPERVISION AND MANAGERIAL EXPERIENCE

- Maintenance Manager responsible for all mechanical and electrical maintenance for the site including budgets and expenditures as well as the coordination of the Unit Outage activities with the Station Project Manager.

- Station Project Manager and Outage Manager responsible for all on-site construction activities, craft labor coordination and contractor services activities, including all planning and scheduling activities for Unit Outages ($30M to $50M) as well as the installation of all capital projects ($5M to $40M) requiring contracted labor support. This also includes the involvement with the largest EPC contract ($730M) in the Station's history. As Project/ Outage Manager was the owner's interface with the imbedded maintenance contractor on site.

- Supervised craft personnel and other professionals in the installation, inspection, maintenance, and troubleshooting of process equipment, including pumps, fans, motors, turbines, compressors, and generators.

## PLANNING AND DEVELOPMENT EXPERIENCE

- Prepared detailed engineering studies, estimated job costs, developed equipment and construction specifications, and selected vendors for capital projects, planned overhauls and maintenance repair activities.

- Developed and implemented new equipment training programs for operations and maintenance personnel.

# Robson Forensic
### THE EXPERTS

JOHN G. GREEN II, P.E.
Mechanical Engineer - Industrial Machinery Expert

## PROFESSIONAL EXPERIENCE

**2015 to present**

**Robson Forensic, Inc.**
*Associate*
Provide technical investigations, analysis, reports, and testimony toward the resolution of commercial and personal injury litigation involving all types of industrial process systems and associated equipment failures.

**1986 to 2015**

**NRG Energy Services - Homer City Generation**, Homer City PA
(formerly EME, GPU\Genco, Pennsylvania Electric Company)

| | |
|---|---|
| *Outage Manager* – Station | 2013-2015 |
| *Maintenance Manager* – Station | 2012-2013 |
| *Project Manager* – Unit 1&2 Scrubbers | 2011-2012 |
| *Project Manager* – Station | 2008-2011 |
| *Engineer Senior I* – Station (Rotating Equipment) | 1986-2008 |

**1984 to 1986**

**Enduro Stainless Inc.**, Massillon, OH, (formerly Enduro Div. of Republic Steel Corp.)
*Supervisor* – Mechanical Department
Provided engineering support services and supervision to various production areas such as 2 and 4 high cold rolling mills, sendzimir mills and heat treatment furnaces.

**1980 to 1984**

**Republic Steel Corporation**, Canton, OH
*Technical Associate* – Mechanical Department
Provided engineering support services and supervision to various production areas such as electric arc furnaces, slab and billet casters, bar and slab mills, heat treatment furnaces, grinding and conditioning equipment and various straightening and shaping equipment.

## PROFESSIONAL CREDENTIALS

Professional Engineer: NCEES, Alabama, Florida, Illinois, Indiana, Kentucky, Maryland, Michigan, Missouri, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, West Virginia, Wisconsin

## EDUCATION

Bachelor of Science, Mechanical Engineering Lafayette College, Easton, PA, 1979

**THE EXPERTS**
# Robson Forensic

### JOHN G. GREEN II, P.E.
### Mechanical Engineer – Industrial Machinery Expert

## CONTINUING EDUCATION AND TRAINING

Lockout Permits:  Driving Accountability When Procedures are not Enough, Master Lock Webinar, October 2018

How to Implement a High Energy Piping (HEP) Program to Prevent Catastrophic Damages and Minimize Unplanned Outages, POWER, July 2018

Behavior-Based Safety:  The Controversy Continues, CORITY Webinar, May 2018

Principles of Scaffolding, OSHA 3085, National Resource Center for OSHA Training, May 2018

Calibration:  Process Control Meets Reliability, POWER, April 2018

Optimizing Level Control for Maximum Reliability and Efficiency in Combined Cycle and Coal Plants, POWER, April 2018

11 Tips for Implementing a Contractor Management System, BROWZ Webinar, April 2018

Condenser Tube Cleaning:  Essential for Reliable Power Generation, POWER, April 2018

Rapid Generator De-Gassing:  Improving Personnel Safety in Power Plants, POWER, March 2018

U.S. Department of Labor Mine Safety and Health Administration (MSHA) Surface Miner Refresher Course, Tri-State Safety Training, February 2018

Finding and Closing the Gaps in Your Lockout/Tagout Program, BRADY, February 2018

Raising the Bar on Contract Safety:  Beyond Prequalification, Veriforce Webinar, February 2018

Construction Arbitration: An Introduction – Beginner, RedVector, February 2018

Making the Case for Contract Management, BROWZ Webinar, January 2018

Licensure Under Attack, National Society of Professional Engineers, January 2018

Ethical Decision Making for Engineers #2, RedVector, November 2017

Ethics for the Practicing Engineer – An Introduction, RedVector, November 2017

Avoid the Three Main Failure Modes of Electrical Power Critical Assets, Power and Emerson, August 2017

Fall Hazard Awareness for the Construction Industry, OSHA #7405, West Virginia University National Resource Center, May 2017

Power and Sure ID Webinar
Giving Insiders Access:  Make Sure Front and Back Doors are Locked
March 2017

U.S. Department of Labor, Mine Safety and Health Administration, Uniontown, PA
MSHA Surface Miner 8 Hour Refresher Training
January 2017

Health and Safety Magazine/Browz Webinar
The 'Why' of Contractor Management
January 2017

# Robson Forensic
**THE EXPERTS**

## JOHN G. GREEN II, P.E.
### Mechanical Engineer – Industrial Machinery Expert

National Safety Council Congress and Expo, Anaheim, CA, October 2016
    Make Building a Safer Workplace a Reality
    Executive Forum: The Art and (Neuro)science of Safety
    NFPA 70E- Educating Parties on Shared Responsibilities: Owner-Contractor
    Human Performance: Adding the Human Element in Risk Assessment
    Certification Exams: Study Tools and Techniques
    Keynote: "The Human Side of Injury Prevention"
    OSHA's Top 10 Cited Violations
    You Can't Hand Over Your Safety Responsibility!
    OSHA's "Most Interesting": Four Cases Presented by the Lead Investigator
    Keynote: "Who Killed Lindsey's Father?"
    Preventing Slips, Trips and Falls
ASME Power and Energy/ICONE Conference, Charlotte, NC
    ICONE Keynote Address
    Regulatory, Codes, and Standards Compliance
    Operating & Maintenance Committee Meeting
    Generator Operations, Maintenance, and Trends
    Power Plenary Session - Advances in Steam Turbine & Generators
    Steam Turbine Component Design Analysis and Performance
    Power Plant Pumping Systems Optimization – Tutorial
    Power Plant Pumping Systems Optimization - Panel Session
    Power Plenary Session - Advances in USC & AUSC Boilers
    Optimizing Power Plant Efficiency and Flexibility
    Plant Operation and Maintenance Challenges and Solution (Session Chair)
    Advances in Plant Dispatching, Scheduling, and Decision Making
    June 2016
DiVal Safety Summit, Niagara, NY
    June 2016
Health and Safety Magazine Webinar
    Lockout Tagout, Arc Flash and Hazard Communication: What Actions to Take Now
    in Your Programs, June 2016
West Virginia University Safety and Health Extension, Morgantown, WV
    OSHA #7405 Fall Hazard Awareness for the Construction Industry
    May 2016
Meritas Capability Webinar
    The Benefit of Becoming an OSHA Whisperer: Speaking the Language of Regulators
    February 2016
Power Magazine Webinar
    Navigating Coal-Fired Power Plant Fire and Safety Standards
    September 2015
Titan Continuing Education
    Construction Claims, August 2015
Titan Continuing Education
    OSHA – Fatal Facts: Fatalities Caused by Improper Work Practices
    August 2015

# Robson Forensic
**THE EXPERTS**

### JOHN G. GREEN II, P.E.
### Mechanical Engineer – Industrial Machinery Expert

U.S. Department of Labor, Mine Safety and Health Administration, Homer City, PA
    MSHA Surface Coal Miner 8 Hour Refresher Training
    July 2015
University of Pittsburgh School of Social Work, Harrison City, PA
    Recognizing and Reporting Child Abuse: Mandated and Permissive Reporting in
      Pennsylvania, Meets ACT 31 2014 requirements, May 2015
ASME Power Division Conference, Baltimore, MD
    Operating & Maintenance Subcommittee Member and Student Paper Judge
    July 2014
U.S. Department of Labor, Mine Safety and Health Administration, Homer City, PA
    MSHA Surface Coal Miner 8 Hour Refresher Training
    June 2014
IUP Division of Emergency Services Training, Indiana, PA
    HAZWOPER Operations Level Refresher as defined by 29 CFR 1910.120
    June 2014
Energy-Tech Magazine Webinar
    Performance & Reliability Improvement of Power Generating Assets
    December 2013
Titan Continuing Education
    Centrifugal Pumps: Basic Knowledge & Concepts
    September 2013
Titan Continuing Education
    OSHA – Asbestos Standard for Construction Industry
    September 2013
Titan Continuing Education
    Cost Engineering
    September 2013
U.S. Department of Labor, Mine Safety and Health Administration, Homer City, PA
    MSHA Surface Coal Miner 8 Hour Refresher Training
    July 2013
ASME Power Division Conference, Boston, MA
    Operating & Maintenance Subcommittee Member
    July 2013
IUP Division of Emergency Services Training, Indiana, PA
    HAZWOPER Operations Level Refresher as defined by 29 CFR 1910.120
    June 2013
U.S. Department of Labor, Mine Safety and Health Administration, Homer City, PA
    MSHA Surface Coal Miner 8 Hour Refresher Training
    July 2012
IUP Division of Emergency Services Training, Indiana, PA
    HAZWOPER Operations Level Refresher as defined by 29 CFR 1910.120
    June 2012
ASME Assessment Based Course
    ASME Standards
    April 2012

**THE EXPERTS**
# Robson Forensic

### JOHN G. GREEN II, P.E.
### Mechanical Engineer - Industrial Machinery Expert

Miller Training Programs, Homer City, PA
   Fall Prevention & Protection Competent Person Refresher Training
   March 2012
IUP Division of Emergency Services Training, Indiana, PA
   HAZWOPER Operations Level Refresher as defined by 29 CFR 1910.120
   August 2011
U.S. Department of Labor, Mine Safety and Health Administration, Homer City, PA
   MSHA Surface Coal Miner 8 Hour Refresher Training
   July 2011
ASME Power Division Conference, Denver, CO
   Operating & Maintenance Subcommittee Member
   July 2011
Miller Training Programs, Homer City, PA
   Fall Prevention & Protection Competent Person Refresher Training
   October 2010
IUP Division of Emergency Services Training, Indiana, PA
   HAZWOPER Operations Level Refresher as defined by 29 CFR 1910.120
   August 2010
U.S. Department of Labor, Mine Safety and Health Administration, Homer City, PA
   MSHA Surface Coal Miner 24 Hour New Miner Training
   July 2010
ASME Power Division Conference, Chicago, IL
   Operating & Maintenance Subcommittee Member
   July 2010
IUP Division of Emergency Services Training, Indiana, PA
   HAZWOPER Operations Level Refresher as defined by 29 CFR 1910.120
   August 2009
Miller Training Programs, Homer City, PA
   Fall Prevention & Protection Competent Person Training
   June 2009
Utility Pump Troubleshooting Symposium, Philadelphia, PA
   Dr. Elemer Makay, ERCO
   March 1995
Vibration Institute 16th Annual Meeting, Williamsburg, VA
   Vibration Institute
   June 1992
Practical Solutions to Machinery and Maintenance Vibration Problems, Pittsburgh, PA
   Update International, Inc.
   July 1991
Machinery Failure Analysis and Prevention, Boca Raton, FL
   Center for Professional Advancement
   April 1990
Applied Pump Technology, Brunswick, NJ
   Center for Professional Advancement
   July 1988

# Robson Forensic
**THE EXPERTS**

JOHN G. GREEN II, P.E.
Mechanical Engineer – Industrial Machinery Expert

Ultrasonic Examination - Level II, Johnstown, PA
    Gilbert Associates
    July 1987
Rotor Dynamics and Advanced Balancing, Syria, VA
    Vibration Institute
    May 1987
Vibration Analysis I, New Orleans, LA
    Vibration Institute
    August 1986
Statistical Process Control, Canton, OH
    Republic Steel Corporation,
    March 1985
Basic Balancing and Diagnostics, Canton, OH
    IRD Mechanalysis, Inc.
    February 1982

## PROFESSIONAL MEMBERSHIPS

ASME Power Division (Active)
    Operating & Maintenance Subcommittee Member since 2010
Vibration Institute, Western Pennsylvania Chapter (Inactive)
    Founding member
    Program Director (former)
    Chairman (former)

## SPEAKING ENGAGEMENTS

ASME Power Division Conference, Denver, CO
    Operating and Maintenance Subcommittee
    Predictive Maintenance Panel Discussion Member
    July 2011
SMRP 5th Annual Conference, Pittsburgh, PA
    Society of Maintenance and Reliability Professionals
    Streamlined RCM Process at the Homer City Power Station
    October 1997
EPRI Streamlined RCM Workshop, Columbus, OH
    Electric Power Research Institute
    Streamlined RCM Process at the Homer City Power Station
    May 1997

# Robson Forensic
### THE EXPERTS

JOHN G. GREEN II, P.E.
Mechanical Engineer – Industrial Machinery Expert

EPRI Plant Maintenance Optimization Conference, Eddystone, NJ
    Electric Power Research Institute
    Reliability Centered Maintenance for a Coal Mill Pulverizer
    December 1996
EPRI 6th Predictive Maintenance Conference, Philadelphia, PA
    Electric Power Research Institute
    Bearing Failure Analysis of a Large Axial Flow Fan
    May 1994

## PUBLICATIONS

"Detection and Analysis of a Main Bearing Failure in an Induced Draft Fan," *Vibrations*, Vol. 9, No. 1, March 1993.

CIVIL CASE INFORMATION STATEMENT
CIVIL CASES

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

*FILED*

*2018 DEC 21   A 10: 20*

*KANAWHA COUNTY GATSON CLERK*
*CIRCUIT COURT*

I.    CASE STYLE:

Plaintiff(s)

**JAYSON HUTCHINSON,**

vs.

CASE NO: _____

HONORABLE: _____

Defendant(s)

**UNITED DAIRY, INC.**
**George Wood**
**300 North Fifth Street**
**Post Office Box 280**
**Martins Ferry, OH 43935**

| Days to Answer | Type of Service |
|---|---|
| 30 days | WV Secretary of State |

Original and 6 copies of Complaint furnished herewith.

| PLAINTIFF:   JAYSON HUTCHINSON | CASE NUMBER: |
|---|---|
| DEFENDANT: UNITED DAIRY, INC. | |

II.   TYPE OF CASE:

| TORTS | OTHER   CIVIL | |
|---|---|---|
| ☐  Asbestos | ☐  Adoption | ☐  Appeal from Magistrate Court |
| ☐  Professional Malpractice | ☐  Contract | ☐  Petition for Modification of Magistrate Sentence |
| ■  Personal Injury | ☐  Real Property | ☐  Miscellaneous Civil |
| ☐  Product Liability | ☐  Mental Health | ☐  Other |
| ☐  Other Tort | ☐  Appeal of Administrative Agency | ☐  Fraud or Conversion |

III.   JURY DEMAND:   ■ Yes   ☐ No
CASE WILL BE READY FOR TRIAL BY  *(MONTH/YEAR)*: 02/20

IV.   DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL
ACCOMMODATIONS DUE TO A DISABILITY OR AGE?   ☐ YES   ☐ NO
IF YES, PLEASE SPECIFY:
☐ Wheelchair accessible hearing room and other facilities
☐ Interpreter or other auxiliary aid for the hearing impaired
☐ Reader or other auxiliary aid for the visually impaired
☐ Spokesperson or other auxiliary aid for the speech impaired
■ Other: ___Unknown at this time___

ROBERT D. CLINE, JR. (W. Va. State Bar No. 755)
ROBERT A CAMPBELL (W. Va. State Bar. No. 6052)
R. CHAD DUFFIELD (W. Va. State Bar No. 9583)

Firm:       FARMER, CLINE & CAMPBELL, PLLC
Address:    P.O. Box 3842
            Charleston, WV  25338
Telephone:  (304) 346-5990
Dated:      December 21, 2018
Signature:

Representing:
■ Plaintiff      ☐ Defendant
☐ Cross-Complainant
☐ Cross-Defendant
☐ Pro Se

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

FILED

2018 DEC 28 A 9: 42

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

KANAWHA COUNTY CIRCUIT COURT
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

| | |
|---|---|
| **Control Number:** 232063 | **Agent:** GEORGE WOOD |
| **Defendant:** UNITED DAIRY, INC.<br>300 NORTH FIFTH STREET<br>PO BOX 280<br>MARTINS FERRY, OH 43935 US | **County:** Kanawha |
| | **Civil Action:** 18-C-1553 |
| | **Certified Number:** 92148901125134100002453098 |
| | **Service Date:** 12/26/2018 |

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of*
*process in the name and on behalf of your corporation as your attorney-in-fact. Please address any questions about this*
*document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

3-4

## AMENDED SUMMONS

### IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JAYSON HUTCHINSON,

      Plaintiff,

FILED
2018 DEC 28  A 9: 42
CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

v.

                                CIVIL ACTION NO. 18-C-1553

                                HONORABLE: LOUIS H. BLOOM

UNITED DAIRY, INC.,

      Defendant.

TO:  United Dairy, Inc.
      George Wood
      300 North Fifth Street
      Post Office Box 280
      Martins Ferry, OH 43935

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby Summoned

and required to serve upon **R. Chad Duffield**, Plaintiff's attorney, whose address is **Post**

**Office Box 3842, Charleston, West Virginia 25338,** an answer, including any related

counterclaim you may have, to the **Complaint** filed against you in the above-styled civil

action, a true copy of which is herewith delivered to you.  You are required to serve your

answer to the Complaint within thirty (30) days after service of this Summons upon you,

exclusive of the day of service.  If you fail to do so, judgment by default will be taken

against you for the relief demanded in the Complaint, and you will be thereafter barred

from asserting in another action any claim you may have which must be asserted by

counterclaim in the above-styled civil action.

Dated: ___12-21-18___

                            **Cathy S. Gatson, Clerk**

                            Clerk of Court

                            By: _____ S. Rubin _____

Civil Action Number          18-C-1553
Package Identification Code  921489011251341000024530 98
Signature Downloaded         12/31/2018 6:02:58 AM
Defendant Name               UNITED DAIRY, INC.

FILED

2019 JAN -2  AM 9: 43

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

 **UNITED STATES POSTAL SERVICE**

Date Produced: 12/31/2018

WEST VIRGINIA SECRETARY OF STATE:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 1251 3410 0002 4530 98. Our records indicate that this item was delivered on 12/28/2018 at 08:23 a.m. in MARTINS FERRY, OH 43935. The scanned image of the recipient information is provided below.

Signature of Recipient :

*Tammy Ward*

Tammy Waldrum

Address of Recipient :

PO BOX
5800

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:     245309

| | |
|---|---|
| Civil Action Number | 18-C-1553 |
| Package Identification Code | 92148901125134100002453098 |
| Signature Downloaded | 12/31/2018 6:02:58 AM |
| Defendant Name | UNITED DAIRY, INC. |

FILED

2019 JAN -2  AM 9: 43

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT


**UNITED STATES POSTAL SERVICE**

Date Produced: 12/31/2018

WEST VIRGINIA SECRETARY OF STATE:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 1251 3410 0002 4530 98. Our records indicate that this item was delivered on 12/28/2018 at 08:23 a.m. in MARTINS FERRY, OH 43935. The scanned image of the recipient information is provided below.

Signature of Recipient :

*Tammy Ward*

Tammy Waldrum

Address of Recipient :

PO Box
43-80

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number:      245309